UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| RANDALL NALLS, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 6:07-CV-00908-LSC |
| | ] | |
| WAL-MART STORES, EAST, L.P., et al., | ] ] | |
| | ] | |
| Defendants. | ] | |

MEMORANDUM OF OPINION

I.   Introduction.

The Court has for consideration a motion for summary judgment, filed by defendants Wal-Mart Stores East, L.P., and Wal-Mart Stores, Inc. (collectively, "Wal-Mart" or "Defendants").  (Doc. 20.)  Plaintiff Randall Nalls ("Nalls" or "Plaintiff") has sued Wal-Mart for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981 ("§ 1981).  (Doc. 1.)  Defendants have moved for summary judgment on all of Plaintiff's claims.  The issues raised in Defendants' motion have been briefed and are ripe for review.

Upon full consideration of the legal arguments and evidence presented by the parties, Wal-Mart's motion for summary judgment will be granted in part and denied in part.

II.   Facts.[1]

Randall Nalls, an African-American, began work at Defendants' Fayette, Alabama store in June 2006 as a temporary remodel associate on the overnight crew. As a temporary associate, Nalls reported directly to a field project supervisor, Thomas Burks ("Burks"). Burks supervised the remodel and setup of stores, and instead of reporting to the Fayette facility manager, Jerry Porch ("Porch"), Burks reported to Wal-Mart's home office. Nalls testified that Burks told him that Burks "was his own boss, that he didn't have a boss."

Nalls first heard the use of the word "nigger" at work about two weeks in to his employment. Another temporary associate, Tony Gill ("Gill"), who

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

is white, blurted out the word on break while listening to a song through headphones. Gill said, "listen man, this is my favorite part," and he repeated the word "nigger" two or three times as he replayed that portion of the song. Nalls testified that he told Gill not to use the word in his presence again, but he admits he did not promptly report the incident to any supervisor.

On a separate occasion shortly thereafter, Gill argued with Nalls after Plaintiff gave him advice on breaking down shelving. When Nalls returned from stacking shelving, he overheard Gill hollering to co-workers, "you see that punk ass nigger testing me." Plaintiff believed Gill was talking about him because they just had an argument. This time, Nalls told Burks about Gill's language.

Nalls, however, was not happy with Burks' response. When Plaintiff asked for privacy, Burks refused and would only speak to Nalls while standing at the front of the store among the cash registers. Burks said he would talk with Gill about his language, but Nalls says Burks also told Plaintiff that the word "nigger" was in the dictionary; that black people can say the word to each other but when white people say it, it becomes an

issue; and, thanks to black people and their music and culture in society today, the word is acceptable among those aged fifteen to twenty-five. Nalls says he was embarrassed because other employees could hear his conversation with Burks.

Nalls later heard from co-workers that Gill was still using the word "nigger." Plaintiff approached Burks again to discuss Gill's language, and Burks told Nalls that he would talk with Gill once more, but if Gill was just rapping a song, it was harmless. Burks also told Nalls that he could not complain about something he had not heard himself. Burks said that "nigger" was a bad word that should not be used, but he again stated that it was becoming almost acceptable in today's society. When Plaintiff told Burks that Gill wanted to fight and it could happen, Burks told Nalls that he would fire them both and not look back.

After Nalls' second complaint to Burks, Gill talked to Plaintiff in the bathroom at work and told him that some of the crew might tell him about some things that he had said—namely, that he had said "nigger" a few times in a conversation. Gill told Nalls that he did not mean anything by it and wanted to tell Nalls before he heard about it and turned him in. Plaintiff

was particularly offended that Gill continued to use the word "nigger" in the course of his explanation.

Burks testified that he reported Nalls' complaints to Porch. Porch says that until Burks sent him an email on August 2, 2006, he did not know Gill had used racial slurs at work. Porch received Burks' email on the same day that he received Nalls' EEOC charge, which had been filed on July 20, 2006.

On the evening of August 9, 2006, Porch spoke with Nalls and two other associates about Nalls' complaints regarding Gill. During this conversation, Porch asked Nalls why he went to the EEOC before talking with him. Nalls wrote a statement for Porch outlining occasions when Gill had used the word "nigger"; he also complained about Burks' reactions to his complaints.

The evening of August 9 was also the night that temporary associates were told whether they would be hired as regular Wal-Mart associates. Nalls was offered a choice between two jobs, and he accepted a position as an unloader on the overnight shift. Gill was terminated.

Nalls now claims that Burks called him "boy" most of the time he was his supervisor, and eventually on a daily basis. He contends Burks

sometimes said he was a "dummy" and an "idiot" while calling him "boy." Nalls also testified that Burks told racial jokes, but could only remember one about a great white shark whose job was to "catch shaved monkeys and eat them or kill them or hang them."

Nalls says that after he began work as an unloader on August 14, 2006, and Burks was no longer his supervisor, he did not suffer any mistreatment on the job. On September 8, 2006, however, Nalls had to leave work to take his young daughter to Children's Hospital. Nalls was not yet eligible for personal or medical leave, but Porch allowed Nalls to be absent from work to take care of his family. Nalls was given a leave of absence form that needed to be completed by a doctor and returned when he came back to work. Wal-Mart policy required an associate to submit their leave of absence form within fifteen days of the last day worked.

Nalls' daughter continued to be very ill, but as of October 31, 2006, Plaintiff had not returned his leave of absence form. Nalls testified that he called in every day, but generally could not identify the person(s) he spoke with at the store. Nalls said he thinks he spoke with Porch several times, but cannot recall when. He does remember that Porch told him once on the

phone that they did not have a record of him calling in and that Nalls needed to return his leave of absence form.

Wal-Mart's attendance policy states that an associate who is absent for three consecutive days and fails to notify a member of management will be terminated. Porch sent Nalls a certified letter on October 31, 2006, which stated Plaintiff had seven days to return the leave of absence form or his employment would be terminated. Nalls' mother signed for the letter, but she did not give it to him until after his deadline had passed. Plaintiff's employment with Wal-Mart was terminated, and Porch indicated on the exit interview form that he recommended Nalls for rehire.

In November/December 2006 or January 2007, Nalls returned to the Fayette store to ask about his employment. Porch no longer worked there, and Nalls was told that his employment had been terminated because he had not returned from leave and his job was filled.

III. Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

   Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Analysis.

Plaintiff contends that he suffered a racially hostile work environment during his employment as a temporary associate at the Fayette, Alabama Wal-Mart store.  He also argues that Burks retaliated against him for complaining about the use of racial slurs, and his employment was terminated because he filed a charge of discrimination with the EEOC. Defendants maintain that Nalls has not adduced sufficient evidence to support his claims and they are entitled to judgment as a matter of law.

A.   Hostile Work Environment.

In order to establish a hostile environment claim in this circuit, a plaintiff must show: "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms

and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th 2002) (citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999)). Defendants contend that Plaintiff cannot support the fourth and fifth elements of his claim, and also argue that his allegations regarding Burks' conduct cannot be considered because they were not sufficiently alleged in the Complaint or EEOC charge.

1. Burks' Alleged Conduct.

Defendants maintain that Plaintiff is arguing two distinct hostile environment claims—one involving co-worker harassment, and one involving supervisor harassment. They say that the latter claim was not pled in the Complaint or mentioned in Plaintiff's EEOC charge; therefore, it must be disregarded by the Court. (Doc. 21 at 19-20.)

Title VII claims are "limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th 1994) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir.

1970)). In his EEOC charge, Nalls describes the alleged racially hostile environment at Wal-Mart, in part, as follows: "The co-worker has used the word ["nigger"] several times in my presen[ce] and it seems to be an ongoing problem but the supervisor doesn't view it in that manner, even using the word himself in my presence and taking no action against the co-worker." An EEOC investigation into the words and actions of Burks, as Plaintiff's supervisor during the specified time period of his employment, and how those words and actions may have contributed to a hostile work environment, could certainly be expected from the allegations set forth in Plaintiff's charge.

Moreover, while Plaintiff does not say in his Complaint that Burks called him "boy," "stupid," or an "idiot," and does not mention any racist jokes, under "Count I—Racially Hostile Work Environment," Plaintiff writes: "Defendants are vicariously liable for the conduct of the employees and *supervisors* that harassed Plaintiff." (Doc. 1 ¶ 19 (emphasis added).) Aside from Gill, Burks is the only other person specifically named in Plaintiff's

factual allegations,[2] and the Complaint includes assertions that Burks contributed to the hostile environment by telling Nalls that use of the word "nigger" was acceptable in today's society.

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." This "notice pleading" does "not require that the pleader allege a 'specific fact' to cover every element or allege 'with precision' each element of a claim." *Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)). Plaintiff's Complaint clearly sets forth a claim for hostile work environment based on race, and it is evident from the language in that Complaint that Burks' conduct is at issue. The Court agrees with the plaintiff that Defendants' attempt to create two different hostile environment claims—and separate Nalls' co-worker's actions from his supervisor's actions—is faulty. Defendants' argument that Nalls did not mention Burks' use of the word "boy" or racist jokes until his deposition is a contention that goes to the veracity and

---

[2]Burks' name in the Complaint is misspelled as "Burke."

weight of the plaintiff's testimony, which this Court cannot decide at summary judgment.

    2.    Harassment and Responsibility.

Defendants maintain, however, that Plaintiff cannot show that the alleged racial harassment he suffered was sufficiently severe or pervasive to alter the terms and conditions of employment. In the alternative, Defendants contend that Nalls did not properly report some of the harassment and Wal-mart took adequate remedial action with regard to the complaints that were made.

"Determining whether the harassment was sufficiently severe or pervasive involves 'both an objective and subjective component.'" McCann v. Tillman, 526 F.3d 1370, 2008 WL 1991172 at *7 (11th Cir. 2008) (quoting *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002)). "In determining the objective element, a court looks to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (internal quotations omitted). "The

employer will be held liable if it fails to discover a hostile atmosphere and to take appropriate remedial steps." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995) (citing *Busby v. City of Orlando*, 931 F.2d 764, 785 (11th Cir. 1991)). And, a "plaintiff may have a viable hostile environment claim even if the racial remarks were not directed at [him]." *Id.* (citing *Busby*, 931 F.2d at 785).

After a thorough review of the record, the Court has serious doubts about the objective severity or pervasiveness of the alleged harassment in this case. However, genuine issues of fact exist with regard to that alleged harassment, and those disputes must be determined by a jury. Similarly, the record contains questions of material fact regarding the information Nalls was given about the reporting structure at Wal-Mart for complaints of discrimination and the reasonableness of the remedial actions taken by supervisors/management at Wal-Mart. Therefore, summary judgment will be denied on Plaintiff's hostile environment claim.

B.  Retaliation.

With regard to his retaliation claim, Plaintiff argues that: (1) Burks retaliated against him with abusive treatment for complaining about

discrimination and later filing his EEOC charge; and (2) he was subsequently terminated for filing the EEOC charge. (Doc. 23 at 31-33.)

In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that he engaged in statutorily protected expression; (2) that he suffered an adverse . . . action; and (3) that there is some causal relationship between the two events." *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997); *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1120 n.10 (11th Cir. 2001). The U.S. Supreme Court has clarified that a plaintiff does not need to suffer employment-related adverse actions. Rather, federal anti-retaliation provisions encompass any employer actions that would be "materially adverse to a reasonable employee or job applicant." *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S. Ct. 2405, 2409 (2006).

To establish a causal connection, a plaintiff "need only show 'that the protected activity and the adverse action were not wholly unrelated.'" *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (quoting *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985)). The plaintiff must also show that the decision-maker was aware

of the protected conduct.  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quoting *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir. 1999)).

"Once a plaintiff has established a prima facie case [of retaliation], the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action."  *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citing *Olmstead v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998); *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).  "The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff."  *Id.* (citing *Olmstead*, 141 F.3d at 1460).

      1.    Abusive Treatment.

Plaintiff has not pointed to any evidence that supports his claim that Burks increased his alleged abusive treatment as a result of Nalls' complaints to him of racial discrimination.  In fact, a review of the record shows Plaintiff used words such as "always" and "majority of the time" to

describe Burks' actions, indicating that the conduct persisted throughout Nalls' employment as a temporary associate. (Nalls Dep. at 91, 126-27.)

Plaintiff did testify that Burks' misconduct "seemed" to get worse after he filed his EEOC charge, not after he complained about Gill. (*Id.* at 290-91.) His testimony about the worsening conduct, however, is largely vague and conclusory. More importantly, there is no evidence in the record that Burks was aware of the EEOC charge while he supervised Nalls.

Without admissible evidence to support a causal connection between Burks' alleged increased abuse and Nalls' complaints of discrimination or filing of an EEOC charge, this claim must be dismissed.

    2.    Termination.

Defendants also maintain that Plaintiff cannot establish a causal link between his EEOC charge and termination because Nalls was hired as an unloader immediately after they learned of the charge, and he was terminated approximately three months later. Case law certainly supports the proposition that without more, a three month gap in time between Defendants' knowledge of the EEOC charge and Nalls' termination is not sufficient circumstantial evidence to establish a causal connection. *Higdon*

*v. Jackson*, 393 F.3d 1211, 1220-21 (11th Cir. 2004) (concluding that a three month temporal proximity, without more, "does not allow a reasonable inference of a causal relation"); *see also Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) ("[T]hree and one-half month temporal proximity is insufficient to create a jury issue on causation."). And, Nalls has not indicated to the Court that there is any other reason to infer that the EEOC charge was the reason he was terminated.

Yet, even if this Court were to assume that Plaintiff had established a prima facie case of retaliation, Defendants have proffered a legitimate, nondiscriminatory reason for Nalls' termination: after nearly two months off the job, Nalls had not returned his leave of absence form, and he did not respond to an October 31, 2006, certified letter that stated he would be terminated if he did not return the form within seven days. While Nalls contends that Defendants' reason is unfair because he was in Birmingham and did not receive the letter in time to respond, he has not introduced sufficient evidence that this reason was pretext for prohibited, retaliatory conduct. This claim of retaliation will also be dismissed.

V.   Conclusion.

For the reasons stated above, Defendants' motion for summary judgment will be granted in part and denied in part. Plaintiff's claims of retaliation under Title VII and § 1981 will be dismissed with prejudice. The remaining Title VII and § 1981 hostile environment claim will proceed to trial. A separate order will be entered.

Done this 30th day of June 2008.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297